Good morning, Your Honor. G. James B. Simone on behalf of plaintiffs and appellants. I'd like to reserve approximately five minutes for rebuttal. I'd like to focus my argument at first on the liability of Officer Thomas Powell and, of course, the question of whether he was acting in the course and scope of employment when he engaged in coercive, extortionate conduct and intentionally inflicted emotional distress on each of my clients. When we look at his conduct, during the entire course of his conduct, he was engaged in the actions of approving or denying their asylum applications. We've alleged in the complaints the intimidating factors surrounding the initial interview. We've alleged that he repeatedly telephoned each of these individuals and said that there were problems with their applications and he needed to meet with them in person to further discuss their applications. Again, conduct which has everything to do with his job duties in approving or denying an asylum application. He also said that he would need to meet with them alone and meet with them at their house to discuss their asylum applications. And when he met with Zhu Lu, as the complaint alleges, he had her asylum file with her. He went through the papers and he indicated to her that he could approve or deny it. He was set to deny it and unless she cooperated with him by providing either sex or money, he was going to deny it. And when Zhu Lu told him, leave me alone, please leave, the last thing he said was, I am going to deny your asylum application, which he did four days later. So when we look at all of that, those threats, that coercive conduct, those requests for either sex or money, this is really an outgrowth of his employment duties and cannot be decided as a matter of law on a motion to dismiss that it's outside the coercive scope of employment, merely because some of his conduct involved elements of sexual advances. Now, of course, similarly, we have Zhe Hao, who cooperated with the United States government in a sting operation. The facts are very similar.  And extorting $2,000. And in fact, the allegations were proved that Mr. Powell was engaged in this. So when we look at California law, ordinarily under California law, it's a question of fact for the jury to decide whether there's conflict in inferences, whether or not an individual is acting in the coercive scope of employment. And here we do have those conflicting inferences. The inferences taken from the requests for money and the coercive threatening conduct all arise out of his job duties. The government can argue that an inference that he also came to see if he could obtain sexual favors from our client might show that his motivating factor was from lust. But if you look at the Lisa M case, the California Supreme Court case, it says in order for it to be outside the coercive scope of employment, he has to be motivated solely by propinquity and lust. I'm sure I butchered that word. But propinquity just means his proximity to the plaintiffs. And I think we all know what lust means. But he couldn't have been solely motivated by lust here because he asked for money, too. So, again ---- But was there any sense that asking for money was part of his official duty? That is, this is a fee to the government as opposed to something ---- I mean, my position arguably gives me some leverage. I grew up in Chicago, and I learned that being a judge was a lucrative occupation. I've been disappointed, but so suppose I take advantage of my position and lust after money, and I manage to extract $25,000. Is that within the scope of my employment? Well, I think that would be for the trier of fact to decide, Your Honor. Because, in other words, under California law and in the Clark acquitment case, we cited you had fraudulent conduct which the employees were arguably engaged in for their own financial benefit, not the company's financial benefit. And it was criminal conduct that was held to be within the course and scope of employment because it was connected to their sales positions where they were selling equipment. And the court actually in Clark compared it to extortion. I mean, it says on page 525 of that case, the case is cited in our brief. This particular quote is not. There is, in other words, a form of extortion in what is done in the course of negotiation rather than the issue of any formal use of the process itself, which constitutes the tort. So under California law, you can have criminal conduct. You can have conduct which is contrary to the instructions of your employer, which goes against the rules of your employer. But the question is, when you look at the totality of the conduct, are you engaged in activity which is authorized by the employer, which here Officer Powell was. It was part and parcel of his job duties to conduct asylum interviews and to approve or deny asylum applications. So the fact that this is criminal conduct does not take it outside the course and scope of employment. And there was a long list of cases in our initial brief that we filed involving assault of conduct where someone's on the job, they get into an argument with someone. One case, security guard chases a man down the street and beats him up. Well, certainly that individual is not doing that for the benefit of his employer. It was a personal argument, but it initiated inside the workplace. And it was an outgrowth of his job duties. Flores v. Autozone, a recent case that I don't know that was cited in the brief, but basically you have a guy who's selling auto parts, and he doesn't like the way a customer talks to him, and he takes up a pipe and hits him in the head. In that case, found to be within the course and scope of employment in a situation whereas here his initial contact with the person was a work-related dispute. And certainly we have that work-related dispute here when the entire course of conduct of Officer Powell is intimately related to the job duties of approving or denying asylum applications. It was just an error of law when the court decided that without explanation that the extortion substantially deviated from his job duties, whereas here he was utilizing his power in order to extort that money. You cited at the outset Lisa M., and I think that is a critical case, but I'm not sure how Lisa M. really speaks in your favor. I think you know what I'm talking about. Can you go through that more carefully and explain why this doesn't fit the part of Lisa M. that holds the hospital not responsible? Lisa M., I think a critical factor, Your Honors, is the ultrasound technician was done with his ultrasound, left the room, and then came back and said, I can help you determine the sex of the baby if I do this. So he basically was outside of what his core job duties were. The second thing of Lisa M. that I think is a critical distinction here is that the conduct was solely a sexual assault. The torturous conduct was solely a sexual assault. As contrasted here to where we have coercive conduct, threats of intimidation, which violate the specific statutes that we've cited in our brief, California Civil Codes 51.7 and 52.1, where you're depriving someone of their rights under the laws of the United States. And the deprivation of the right here is the right to, one, have your constitutional rights protected, due process rights in an asylum application, and two, that the interview has to be conducted in a non-adversarial manner. So I think that, look, if Officer Powell just went to their home, broke in, and God forbid, raped each of these poor young women, then I think that the analogy to Lisa M. might be a better analogy, although I still think that we have, you know, we preserve our arguments that his conduct as an asylum officer and his power is more akin to a judge or to a police officer. But here we don't have that. You certainly have pretty strong support in the Miriam case. It looks like California courts have been backpedaling on that one about as fast as they can. It looks like it may be confined to police officers, which is an interesting distinction here because the FTCA itself draws a distinction, as you conceded in your reply brief, draws a distinction between police officers and other kinds of Federal officers. We concede that Officer Powell is not a law enforcement officer. That's correct. Right. And if so, then that probably takes the sexual, that probably takes the battery part out of this and may leave you only with the extortion claim. The battery on behalf of Powell, I would agree, Your Honor, that a battery cause of action could not be held to be within the course and scope of employment. What we could, what we can allege and should be permitted to allege, is that the United States was negligent in when they had notice of Powell's dangerous propensities. And that's the, I know I'm under five minutes of time, but the second part of my argument in terms of whereas here they had a mandatory duty to investigate when they were on notice, that the United States could be liable for their own negligence in allowing that, in causing that battery to occur. The, you know, there are, you know, terms of the U.S. v. Olson and the private person analogy. I mean, this is a situation where a private person can be held liable under 51.7, 52.1. We've cited one case, the CR v. Tenant Healthcare Corporation case, that says that under 51.9 an employer can be held liable for its employee's conduct. I'd like to draw the court's attention to a D.C. v. Harvard-Westlake School, 98 Cal reported third at 300. It's a 2009 case in which it led further support that under 51.7 an employer could be held liable for its employee's tortious conduct where there's threats of intimidation by violence. And that was following the case of Steps v. Superior Court, which is found specifically at 136 Caleb 4th at page 1447. So in other words- I think that these are not the citations in the briefs. The two later cases are not. Could you submit either a, you know, we still have a slip system. Give them to us in writing, either with the clerk today or by a 20HA letter by Monday. I'll do it by a 20HA letter. That's fine, Your Honor. I appreciate that. In preparing for the oral argument and shepherdizing the cases, I came upon these cases. But it's important to note that in terms of the judge's decision ultimately or the government's position is you can't have a private person analogy because really you're only relying on Mary M. And that's wrong for two reasons. One, Mary M., the officer, could be sued at his individual capacity. It's not a color of state law case. It's for a state law tort. And, two, there are private person analogies. I mean, Mary M., really, there's an exception to course and scope of employment under California law for purely sexual assaults. And Mary M. has set forth the standard that were a police officer, someone with similar authority engaged in that type of conduct, then it can be within the course and scope of employment. But whereas here we have conduct of an extortionate nature that violates 51.7 and 52.1, the private person analogy in the cases I've cited provides support that we should have been allowed to proceed. I have two minutes, so I'll just make my point briefly on the discretionary function in that, you know, as we've led to the papers, there are mandatory duties for the United States to have followed. They were on notice that Powell previously. Okay. And where does the duty to supervise Powell come from? The duty to supervise Powell comes from one emanates from the Constitution that these have to be. Which provision of the Constitution? Due process rights. Okay. Now, if I read the due process clause, I'm not going to see anything in there that's going to indicate that you have to supervise Powell in any particular way, am I? Not a particular supervision, Your Honor. But whereas here there are notice that he has extorted a previous asylum applicant and who was also an interpreter, they are under a duty to report it to the OIG and to investigate it. And the mandatory duty comes from conducting the hearings in a non-adversarial manner. I mean, that's under the 29C statute that we cited. But in other words, if you have conduct where someone's engaging in extortion, clearly that's adversarial in the process. And here what we've alleged is that no investigation took place. So in terms of the discretionary, now they contend it does. But again, a factual dispute for which discovery should be allowed. Whereas here you have allegations of serious misconduct, it must report it to the OIG. The person who reported the misconduct, Judith Marty, was never questioned about what she knew. So a reasonable inference is that no adequate investigation took place. And once again, in terms of the analysis of the discretionary function exception, it shouldn't be resolved at the pleading stage. It's a particularized analysis, and we should be able to proceed on discovery to find out, what else did they know? Were there other complaints against Powell? We were deprived of our right to do that. Here we have two individuals who cooperated with the United States government to put a dangerous person away, and they were left without any remedy whatsoever. And I would suggest that justice requires that they be provided a remedy, and the law supports that under California law. What happened to the second person who was ordered deported? Is she still here? She's still in the United States, Your Honor. And who made that decision? Well, she's currently under a removal order. I've been in touch with her immigration attorney. We're working with the United States government to extend the stay during the pendency of that process. And during that period of time, we intend to work with her immigration attorney to provide for a U-5 visa, basically to stay last until December of 2009. Because the whole thing was based on Powell's decision, wasn't it? That's correct, Your Honor. I mean, Powell's decision was in terms of the file. You know, there is a de novo review, but a new asylum officer was never assigned to Ms. Julew, and that was part of it. There was a Ninth Circuit appeal in which the immigration attorney argued that because of the publicity surrounding the prosecution of Powell, that she faced even more danger and threat of prosecution if she was forced to return to China, and unfortunately her application for asylum was denied by the Ninth Circuit. We're taking active steps to see if she can remain in the country legally, but the stay did elapse in December of 2009. Okay. Thank you. We'll hear from the government. Thank you, Your Honor. May it please the Court. Henry Whitaker on behalf of the United States. The district court correctly dismissed the vicarious liability claims in this case that were based on Officer Powell's conduct, and also the negligence claims that were based on the conduct of United States officials other than Powell. And if I could first turn to the vicarious liability claims, there are two independent bases for affirming the district court's dismissal of those claims. First, those claims are barred by the intentional torts exception. Now, wait a minute. You say that in your brief repeatedly, and the intentional tort assault and battery, they do not include extortion. Well, Your Honor, the intentional torts exception bars any claim, quote, arising out of an assault and battery. All right, but they do not include extortion. Would you agree to that? Extortion is not a separately enumerated tort, Your Honor. It's not excluded, is it? It's not a separately enumerated tort. Is it excluded? No, Your Honor. It's not expressly excluded. That's an intentional tort that is not excluded. Well, extortion is actually not the intentional tort alleged here, Your Honor. Well, you answer my question. You use the broad phrase intentional tort. I point to an intentional tort that is not excluded. So confine your phrase to the torts that are excluded. Certainly, Your Honor. The tort that's excluded here is a claim arising out of assault and battery. And the claim for intentional infliction of emotional distress, which is a separate tort alleged here, does arise out of the assault because the plaintiff's alleged in their complaint, in both versions of the complaint containing the vicarious liability claims, the claim for intentional infliction of emotional distress is based on the assault. And this Court held, in both the Snow-Earland case and in the Thomas Lazar case, that intentional torts that are not enumerated under the intentional torts exception are nonetheless barred if they arise out of conduct that forms the basis for a barred tort. And this case does fall into that exception. And, indeed, when plaintiffs repleted their claim for intentional infliction of emotional distress in their first amended complaint, they included the allegations for battery allegations in their intentional infliction of emotional distress. But are they necessarily mutually exclusive? The demand for money, for example, how would that constitute assault or battery? It's not necessarily – the underlying conduct is not necessarily mutually exclusive, Your Honor, but the cause of action that they pleaded here is not independent of the battery. And that's a critical – Well, not independent, but battery makes up only part of it, as I understand it. And, indeed, was there battery? Well, I don't know if they threatened battery or attempted battery, but was – I mean, as I understood the facts, there actually wasn't battery. Arguably, there was assault, but I'm not sure that assault encompassed all the alleged misconduct that's part of the intentional inflection claim. Well, with respect, Your Honor, I believe there was a battery here. I mean, there was unauthorized touching, certainly, of both Ji Hao and Ju Liu alleged when Officer Powell came to their homes and engaged in his outrageous conduct, certainly. Well, let's suppose that Powell had just come to their home and had not touched them and had not asked for sex and just said, I need $2,000 to make this thing go and run in your favor. Then what happens? Well, that would certainly be a more difficult case, Your Honor, yes, but – Well, that would certainly be a more difficult case. Well, tell me what the government's argument would be in such a case and then tell me why that case is different from this. Well, if they weren't relying on any kind of an assault and battery, that case would be different because the claim for intentional inflection or emotional distress would be entirely independent of any kind of conduct that – That would fall under the intentional tort. Exactly, but that's not – I think that was Judge Noonan's original question here. Why can't we separate these out here and say, well, there was both a battery and an attempt to extort, and although they occurred at the same time, we can understand that lawyers do this all the time. We tease these things out. Well, you can't separate them, Your Honor, because the battery is pleaded as a component. That doesn't mean everything that happened falls within the battery. If there was a request for money, that didn't fall within the battery. So why can't that be the source of an intentional inflection claim? Well, it could be, perhaps, if they attempted to plead it independent of that, but this Court indicated in the Thomas Lazar case that even where there's other type of conduct, it also forms the basis for – the claim there was a negligent inflection of emotional distress. What there was is there was – the government was alleged to have said bad things and invaded privacy of various owners of a corporation, and what they tried to do is they said, well, no, no, no, no, I'm pleading a claim for negligent inflection of emotional distress. And what this Court said was, well, yes, that's true, but your claim – your slander allegation, which is an enumerated tort, those allegations are an essential component of your claim for negligent inflection of emotional distress, and I think that same type of reasoning applies here. Is there anything that was non-slander in that case? Well, it's a little bit unclear from the facts, Your Honor. Then that makes it not like this case, does it? Because we know we have a money component that isn't part of assault and battery. Well, I mean, I think it is – I was just going to say that it's not a little bit unclear, but I think there were independent acts of conduct that were alleged under the rubric, and that's why the Court in the case took some pains to talk about the essential conduct. The slanderous conduct was an element of the negligent inflection of emotional distress, and I think that reasoning does apply here. Well, you can see that another way of looking at it is the essential conduct is the demand for money, and now why don't you go on that basis and see what you can say for the government? Well, well, I mean, Your Honor, I think certainly the plaintiffs thought that the battery was essential because when they amended it – Well, now, don't – we just told you, assume for a moment that it's not the way we're seeing it. Oh, certainly, Your Honor. Well, I mean, if the Court views it that way, then the vicarious liability claims against Officer Powell are nonetheless barred because they were not within the scope of his employment under the applicable California law. And I think, Judge Clifton, that you're exactly right that merely abusing authority, that can form the basis of a scope claim only in very narrow circumstances. Well, now, let me go back to the reasoning of Judge Whittaker and Lisa Ann. Do you remember the policy reasons that are stated there for the imposition of liability? I think I do, Your Honor. There are three reasons. To discourage the wrongdoing that went on, to make the employer vigilant, and to spread the loss caused by the conduct. And those policy reasons are an authoritative statement by the Supreme Court of California as to how you were to construe scope of employment. As you know, California has rejected the restatement and has its own approach. And I don't see why all those reasons don't apply here. Well, they don't apply here because the California Supreme Court also applied all those reasons in the Farmer's Insurance case and in the Lisa M. case. And in those cases, the California Supreme Court expressed the limited Lisa M. rule to the circumstance where you have a police officer acting with the ---- Then you have the cases confused. Mary M. is the police officer. And the police officer is not relevant, really. That's a public office. We're talking about what would happen to a private official, a private company. We are, Your Honor. And the Supreme Court in the subsequent cases of the Lisa M. case and the Mary M. case indicated that those principles would not allow you to hold a private ---- within the scope where even where there is some kind of serious abuse of authority like this, which is a gross and substantial deviation from proper duties. I think the California courts make clear you can commit a tort that's not within the scope of your employment, not authorized by your employer, and yet it's in the scope. Certainly, you can in theory, Your Honor, but there needs to be some outgrowth or connection to the employment. And the California Supreme Court and also the subsequent cases from the California Court of Appeal construing the scope of that exception make clear that abuse of job created authority in the manner that is alleged here. Let me give you an example. The Westat case, I think, is a good case. I mean, there what you had was you had a private security guard who pulled a woman over. He had a gun and a badge, pulled a woman over, raped her. And the California Court of Appeal held that even under the Lisa M. case, that that was not in the scope of employment because that case is expressly limited to public police officers who possess the official authority to use coercive force. And I should add, Judge Newton, you indicated earlier that the denial of Jouleau's asylum application was as a result of Officer Powell's determination. And that's not the case, Your Honor. This Jouleau had a hearing before an immigration judge who issued. No. Is that right? No, Your Honor. Someone else. Well, no, absolutely not, Your Honor. Not Professor Powell. Asylum officers such as Officer Powell do not have. The hearing, yes. They don't have the unilateral authority to deny someone's asylum application. And I don't read the premises. That's a good point. So there was a hearing by an immigration judge who issued a 22-page opinion exhaustively enumerating the reasons why she was not entitled to asylum. And that determination was upheld by this Court in 2008 as supported by substantial evidence. So it's simply not the case that Officer Powell had the unilateral authority to deny these women's asylum application. And so I don't think he had any kind of official course of authority that could follow. Well, if he granted it, was there any review? Your Honor, I believe that if he granted it, I believe that my understanding is that there would not be review of that. So he did have a content monitoring underwriting. Well, that's true, Your Honor. But, I mean, again, the threat here was the threat to deny. And that was an empty threat. That was an empty threat. And I think that's the aspect of the threat that is most instructive here. But in any event, even if he did have some kind of course of authority, again, I think the subsequent California Supreme Court cases, the California Court of Appeal cases indicate that it's not that the authority to adjudicate an asylum application is quite distinct from the unreviewable official authority to use force against a citizen that is possessed by a police officer. You want to put it into the police officer. The police officer does not apply. I agree. That was a public employee.  I agree with that, Your Honor. But you shouldn't hop on it. Well, I'm certainly willing to accept that. And I think the applicable law with respect to private employees is absolutely set forth in the West Tech case and in the subsequent Lisa M case and the Farmers Insurance case. And what those cases say, the law applicable to private employers is that this type of gross and substantial deviation from proper work-related duties is not within the scope of employment. And the only reason, you know ---- Well, let me focus. I mean, I've taken Lisa M as the last authoritative statement by the California Supreme Court, which is what binds us. And I've tried to parse it several times, and it does emphasize not just that it didn't derive from the events, but that the actions were not provoked by anything that occurred during the prescribed examination, really what counsel referred to before about it was a slightly later episode when the misconduct took place. I'm not sure for Powell that's the same thing. The misconduct by Powell took place in the core activities he was acting as an asylum officer. Is that under California law because this is one of those peculiar situations where California law, is that under Lisa M something that's determinative? With respect, Your Honor, I don't think that's determinative at all. I mean, when the lab technician in that case came back into the room to supposedly perform a further examination, I think he was absolutely acting with, you know, he was exercising what his job-related duties were. He said that you want to find out the sex of the baby. He did say that, Your Honor. But he was examining her just like he did ten minutes earlier when he was performing an ultrasound examination. He was, as the California Supreme Court recognized, he was abusing his authority. That was the trust and authority that was granted in him as an ultrasound technician. But in any event, Your Honor, Judge Clifton, I mean, I think I urge you to take a careful look as well at the farmer's insurance case, which in some ways is even more instructive because what you had there was sheriff's deputies who were absolutely acting. I mean, you can't go off of these public things. That's just wrong. Well, but, Your Honor, I don't read farmer's insurance in Merriam to be applying principles that were distinctive to public employees. I think farmer's insurance is relevant, but I view it as differently because the misconduct there came within the department. In this case, the victims are the people he's dealing with in his governmental capacity on a subject that they were dealing with him as a government officer. Well, Your Honor, I mean, I think actually that makes farmer's – that aspect of farmer's insurance makes it apply with even greater force here because all of that conduct occurred on the premises, on the job. In fact, you had one example of a – and plaintiffs make much of a distinction between extortion and assault in this case. You had in that case a sheriff's deputy who was abusing his supervisory authority and saying things like, you can't get out of training unless you have sex with me. Mr. Whittaker, I just don't understand it. We are instructed to look at what would happen to a private employer in California, and you come up with these public employers. Well, Your Honor, I – that's true, but I read – I read the lesson of the Lisa M. case, though, to be the general applicable principles, applicable to private employees would not have held that officer liable except for his public employee. So it essentially carved out a general exception to the rule, the general rule that is applicable to both private and public employers. And what I read – I read the Lisa M. case and the farmer's insurance case, though conceitedly in the context of public employees, to say that that public exception does not apply, and instead the general principles, which, again, are applicable to both private and public employees. So I – with respect, I think those cases are instructive on what the liability of a private employee would be under California law. And that's exactly why under the West Tech case. You see, if you get into that, then we have a police officer who is held liable. I mean, I think you're in a morass once you start getting away from the private employer. Well, with respect, Your Honor, I don't think that I am getting away from the principles that would apply to the private employer because, again, in the West Tech case, as the California Court of Appeal – the California Court of Appeal applied both – both Lisa M. and the farmer's insurance case, which, Your Honor, as Your Honor correctly pointed out, are cases involving public employees. They applied that to a private employee, and I think that illustrates that those are the general principles that apply to private employers. I see that my time has expired, Your Honor. I'd be happy to address any questions on the discretionary function exception or any other questions the panel has. If not, we respectfully request that the judgment of this Court be affirmed. Thank you for the argument. I've lost track. Is this – this is deficit time. One minute, but no more than one minute. We really are running late today, and we've read your briefs. We know the argument. We'll continue to look at the case. One minute is it. Thank you, Your Honor. I just wanted to point out a couple of things. One, in terms of Judge Bybee's question of where the mandatory duty emanates from, that the complete site there is 28 CFR Section 0.29C. Secondly, Lisa M. and Maria D., the two cases involving private employers, again, involved conduct of a purely sexual nature as opposed to here, where we have conduct of a coercive, extortionate nature, and that's the distinction in these cases. You cannot rule as a matter of law, as the trial judge did, that this is outside the coercive scope of employment where we have the conflicting inferences. Thirdly, intentional infliction of emotional distress. That emanates from my client's fear of having their asylum application denied. And in terms of what would have occurred here, if Officer Powell approves my client's asylum application, she's approved. It's only, she only needs to go through the appellate process, which has taken her nine years. I'm not sure where that gets you, though, because she did get her application denied, which we would have to presume was what was going to happen in the normal course. So, in fact, how did he make it worse? He made it worse because the file follows. In other words, Powell's notes, his asylum interview, follows an entire process. The government has possession of that file and can use the information that he found in that three-hour asylum interview with our client and anything else as a springboard to prosecute her. And it wasn't as if they said, okay, there's wrongdoing here. Let's purge this and start all over again. That file has followed the case. Damages are an entirely separate issue, not on the table, and I shouldn't have. I'm just curious, that's all. I understand, Your Honor. My overall point is you cannot dismiss this cause of action as a matter of law, both on the negligence and intentional. We thank both counsel for your arguments in this difficult and complicated case. The case just argued is submitted. The next case in the argument calendar is Anderson v. City of Formosa Beach.
judges: Noonan, Clifton, Bybee